## THE BORROWDALE.

*(District Court, D. Oregon.   July 16, 1889.)*

1. STATUTES—EVIDENCE—OREGON COMPILATION.
    The compilation of the general statutes of Oregon, provided for in the act of February 26, 1885, and published in two volumes, with the certificate of the governor, of August 9, 1887, prefixed thereto, as required by said act, is *prima facie* evidence of the general statutes of Oregon then in force, which may be cited and referred to in both judicial and legislative proceedings, by the chapter, title, and section as therein arranged, set down, and enumerated.

2. SAME—AMENDMENT AND REVISION.
    An act amendatory of another act should contain the sections of the latter act as amended, at full length, but it need not also contain such section as unamended.   The act amended need not be published at full length in the amendatory act, unless the amendments thereto amount to a revision' of the same, by producing some change in every section thereof.

8. SAME—TITLE—EXPRESSION OF SUBJECT-MATTER.
    An act entitled merely "An act to amend a certain section of the Compilation of 1887," is void for want of expression of the subject of the same in the title thereof; but an act entitled "An act to amend an act relating to pilotage" purports itself to be an act relating to pilotage, and the subject thereof is therefore sufficiently expressed in the title

*(Syllabus by the Court.)*

In Admiralty.   Libel for pilotage.
*Horace B. Nicholas* and *Edward N. Deady*, for libelant.
*Cyrus A. Dolph*, for defendant.

DEADY, J.   This suit is brought by the libelant, T. F. Neil, against the ship Borrowdale, to recover a balance of $92.06, alleged to be due the libelant for pilotage.

It is alleged in the libel that on May 30, 1889, the libelant was a duly-licensed pilot for the Columbia river bar, and that on that day he took charge, as such pilot, of the Borrowdale, and brought her in over the bar to her anchorage at Astoria; that the Borrowdale then drew 20 feet of water, and her registered tonnage was 1,197 tons; and that for said service the libelant is entitled to demand and receive the sum of $176, of which sum only $83.94 has been paid, leaving a balance due the libelant of $92.06.

The master and claimant, George Guthrie, excepts to the libel, stating that it appears therefrom that the libelant has received for his services all that by law he is entitled to demand or receive therefor.

This exception is in the nature of a demurrer to the libel, and raises the question whether the rate of compensation which the libelant is entitled to receive is that fixed by the law as it stood prior to February 18, 1889,—$8 per foot for the first 12 feet of draught of the vessel, and $10 per foot for each additional foot,—or that prescribed by the act of that.

date, (Sess. Laws, 11,)—$4 per foot draught, and two cents a ton for each ton over 1,000 tons registered measurement.

For the better understanding of this question it may be well to premise that on October 20, 1882, an act was passed entitled "An act to provide for pilotage on the Columbia and Willamette rivers." By section 28 of this act the compensation for bar pilotage was fixed at $6 a foot for the first 12 feet draught, and at $8 for each additional foot.

On February 18, 1885, an act was passed, entitled "An act to amend an act entitled" as above. Sess. Laws, 34. By this act, said section 28 was so amended as to make the compensation of bar pilots $8 a foot for the first 12 feet draught and $10 for each additional foot. On November 25, 1885, an act was passed entitled "An act to amend section 21 of an act entitled" as last above. Sess. Laws, 23. The act referred to as being thereby amended has no section 21, and what was probably meant was section 21 of the act of 1882, which was amended by section 1 of the act of February 18, 1885. However, the compensation of pilots was not thereby affected. On February 21, 1887, an act was passed entitled "An act to amend an act entitled" as last above, "and also sections 3 and 28 of the act of February 18, 1885." Sess. Laws, 95. But the last-named act had no section 28, and the section 28 doubtless intended was the section so numbered in the original pilot act of 1882, which was amended, as above, by the act of February 18, 1885. Neither did this amendment change the rates for bar pilotage.

On February 26, 1885, an act was passed entitled "An act to provide for collecting, compiling, and distributing the laws of Oregon, with annotations." Sess. Laws, 142. This act authorized the secretary to purchase 1,000 copies of such Compilation when prepared; the same to be first "submitted to the governor for examination," and to be by him certified "to contain all the general statutes in Oregon in force, * * * arranged * * * in the order and method of a code, and in sections numbered consecutively from one to the end of the entire body of general statutes, with marginal notes showing the date of the passage of each section." This "Compilation" was to be in two volumes, and so arranged that the codes should be in the first volume, and the other general statutes in the second one.

Section 4 of the act provides: "From and after the time when the said *compilation* shall be examined and certified by the governor, as hereinbefore provided, it shall be in force, and shall be received in all the courts of the state as an authorized compilation of the statutes of Oregon."

On August 9, 1887, the governor prefixed his certificate to a "Compilation of the Statutes of Oregon," published in two volumes, made by "William Lair Hill," copies of which appear to have been purchased and distributed by the secretary in pursuance of said act of February 26, 1885, and properly known as the "Compilation of 1887."

The pilotage act of 1882, and the several acts amendatory thereof, passed in 1885 and 1887, as above stated, constitute title 1 of chapter 66 of this compilation.

On February 18, 1889, in this state of the law on the subject of pilotage, an act was passed entitled "An act to amend title 1 of chapter 66 of Hill's Annotated Laws of Oregon relating to pilotage at the Columbia river bar and on the Columbia and Willamette rivers."

By this act, sundry sections of this title were amended so as to read as therein set forth. Among these is section 3918, which appears, from the subject-matter and the marginal note thereto, to be section 28 of the original act of 1882, as finally amended by section 2 of the act of 1887.

The enactment of this section in the amendatory act is in this form:

"Sec. 7. That section 3918 of Hill's Annotated Laws of Oregon be, and the same is hereby, amended so as to read as follows:

"Sec. 3918. The compensation for piloting a vessel upon or over the bar pilot grounds per foot draught of said vessel is as follows: For piloting an inward or outward bound vessel to or from Astoria over the bar, or from within the bar to the open sea, four dollars per foot draught of said vessel, and two cents a ton for each ton over one thousand tons registered tonnage of said vessel. * * *"

The compensation which the libelant has received is all that the act of 1889 allows him to demand.

Admitting this, the libelant contends that this act is invalid, because passed in contravention of sections 20 and 22 of article 4 of the constitution. It is also admitted that if the contention of the libelant, in this respect, is right, he is entitled to demand and receive the compensation provided in section 3918 of the Compilation of 1887 of section 2 of the act of 1887.

The special grounds on which the validity of the act is impugned are these:

(1) The "subject" of the act is not expressed in the title thereof, as required by section 20 of article 4 of the constitution, which declares, "Every act shall embrace but one subject, * * * which subject shall be expressed in the title."

(2) The act or title sought to be amended is not set forth and published at full length, as required by section 22 of said article, which declares, "No act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length."

(3) The reference in the act to "section 3918 of Hill's Annotated Laws of Oregon" is "meaningless," as there are no such "Laws" known to the law of Oregon.

It would have been proper and convenient if the act of 1885 had declared by what name the compilation of the laws therein provided for should be known and cited, but this was not done, and the sufficiency of any designation of the same, or reference to it, must depend on the circumstances of the case.

The act of 1885 contemplates that the general laws of the state will be "collected, compiled, and annotated by W. Lair Hill;" and the certificate of the governor, prefixed to what purports to be such compilation,

states that it was compiled and annotated by "William Lair Hill," who is assumed to be the same person as "W. Lair Hill."

Section 4 of the act of 1885 designates the work as a "Compilation," and declares that when certified by the governor, as required by the act, "it shall be in force and shall be received in all the courts of the state as an authorized compilation of the statutes of Oregon."

It is not admitted that the legislature could by any such means make a law, and therefore the words "shall be in force" may be rejected as surplusage.

But it was competent for the legislature to authorize this compilation of the laws otherwise "in force," and to provide that the volumes in which it should be published, and the designation of the laws therein by chapters, titles, and sections, with the corresponding sections of the original acts in the margin, should thereafter be evidence of what are the general statutes of Oregon, and how they are divided and enumerated in chapters, titles, and sections. For instance, the legislature may provide that section 2 of the act of February 21, 1887, prescribing the compensation of the Columbia bar pilots, may hereafter be cited and known as "section 3918 of a Compilation of the General Laws of Oregon." And, in my judgment, that is what the legislature has done; so that said section 2 may now in all cases, in the legislature and the courts, be cited and referred to as "section 3918 of the Compiled Laws of Oregon." See *People* v. *Pritchard*, 21 Mich. 241.

Still the question remains: Does the reference in the act of 1889 to "section 3918 of Hill's Annotated Laws of Oregon" sufficiently indicate the compilation of the laws authorized by the act of 1885?

As the act has not provided by what name this compilation shall be known, it may be designated by any word or phrase which will indicate with reasonable certainty that it is meant or intended.

The most proper and natural designation of the publication is that used in the act authorizing it,—compilation. The work is not a "code," although it contains the Codes of Oregon as well as the miscellaneous laws, "arranged under appropriate heads and titles in the order and method of a code." The annotation is a collateral and subordinate part of the work; and the phrase, "Annotated Laws," is by no means an accurate or definite designation of the publication. The "Compilation of the General Laws of Oregon (1887)" is a full and complete title of the work, which in common practice may be conveniently shortened to "Compilation (1887.)" And to this may be prefixed, according to the taste of individuals, and for greater certainty, the name of the compiler.

It was said, on the argument of the exception, that the work does not contain "all the general statutes of Oregon," and a particular omission was mentioned. It did not, however, relate to the subject of pilotage. Besides, the certificate of the governor is *prima facie* evidence of the fact that it does contain all the statutes of a general nature, in force at the date of the certificate.

I say "*prima facie*," for certainly it may be shown, by a comparison with the original roll, that there is an error in the compilation, either

of omission or commission. But probably this could not be done by a comparison with a certified copy of the roll, as that would be the certificate of the secretary of state against that of the governor.

The volumes to which the governor's certificate is prefixed are *prima facie* the compilation provided for in the act of 1885. The section 3918 of the same appears, by the marginal note therein, to be section 2 of the act of 1887, regulating the compensation of Columbia bar pilots; and the amended section 3918, as "set forth" in the act of 1889, is upon the same subject, and almost in the same words. If the act of 1889 had referred to the section thereby amended as "section 3918 of the Laws of· Oregon," there being no such section except in this authorized publication, the inference would be reasonable that such was intended by the legislature. The additional words "Hill's Annotated," prefixed to the words "Laws of Oregon," only serve, under the circumstances, to strengthen this conclusion, because it appears that Mr. Hill prepared and annotated this Compilation.

This is not like the case of *Harland* v. *Washington Territory,* 3 Wash. T. 131, 13 Pac. Rep. 453, cited by counsel for the libelant. In that case an act entitled "An act to amend section 3050 of chapter 238 of the Code of Washington Territory," said Code being, as appears, a private and unauthenticated compilation of the laws of Washington, was held void and inoperative, because there was no such section known to the laws of the territory as the one sought to be amended.

My conclusion on this point is that the Compilation of August 9, 1887, is an authentic publication of the general statutes of Oregon then in force; that it may, for both judicial and legislative purposes, be properly cited or referred to by the designation of chapter, title, and section as therein arranged and set down; and that the legislature intended to and did refer to section 3918 of said Compilation, in the passage of said act of 1889, at section 7 thereof, for the purpose of amending the same as therein set forth.

On the second point but little need be said. The act of 1889 is not, in my judgment, a revision of the act of 1882, as amended by the acts of 1885 and 1887, and compiled and published in title 1 of chapter 66 of the Compilation of 1887. The purpose of the former act, and the effect of it, is to amend certain sections of the latter or the compilation thereof, each section so amended being the subject of a separate enactment, and set forth in the amendatory act and published therein at full length.

What is a revision of an act as distinguished from an amendment thereof, within the purview of the constitution, which makes it necessary to set forth at full length in the amendatory act the act as revised, it is not necessary now to decide. No authority was cited by counsel on the point. My impression is that, as long as there is one section of the original act untouched, there is no revision, and it is sufficient to set forth and publish in the amendatory act only the sections actually amended, and as amended. In this case an act or title containing 101 sections was amended by changing only 10 of them and repealing 2. Neither is

this an amendment by a "mere reference" to the title of the act amended. On the contrary, each section amended is referred to by its number in the compilation, and "set forth and published at full length" in the amendatory act, as amended. The claim, once made, that it is necessary to set forth and publish at full length, in the amendatory act, the section amended, both before and after amendment, is long since denied. *Portland* v. *Stock*, 2 Or. 69; *People* v. *Pritchard*, 21 Mich. 241.

The case of an amendment of a section of an act of compilation, by simply repealing a distinct paragraph, clause, or subdivision thereof, or by adding thereto such a paragraph, clause, or subdivision, the same being supplemental in its nature, whereby the operation or effect of the words of the original section is not changed or affected, but the operation of the section, as amended, is merely enlarged or made to include additional subjects, or become operative under other circumstances, is a peculiar one, and probably no other publication or setting forth is necessary, in the first instance, than that of the amendatory or repealing act, and, in the second one, of the additional paragraph, clause, or subdivisions.

On the first point, counsel for the libelant insist that the "subject" of the act is not expressed in the title thereof, because it appears therefrom that the object of the act is "to amend title 1 of chapter 66 of Hill's Annotated Laws of Oregon," and it does not appear therefrom what is the "subject" of such title 1.

The purpose of the constitution in requiring the "subject" of an act to be expressed in the title thereof is apparent, and has often been stated by courts and judges with great unanimity. Briefly, it is to give notice to the members of the legislature and others concerned of the general scope and purpose of the proposed legislation, and to prevent the enactment of laws containing clauses and provisions not indicated by the title, or having no proper connection with the subject as therein expressed. Therefore, the constitution is not complied with in this respect by the expression of a or any subject in the title, but the subject of the act must be truly expressed. *People* v. *Hills*, 35 N. Y. 453. "But," as was said by Mr. Justice Cooley, in *People* v. *Mahaney*, 13 Mich. 495, "this purpose is fully accomplished when the law has but one general object, which is fairly indicated by its title." See, also, *People* v. *Banks*, 67 N. Y. 571.

If the title of this act ended with the words "Laws of Oregon," there is no doubt in my mind that the act would be void for want of the expression of its "subject" in the title. An act simply entitled "An act to amend a certain section of this Compilation," contains no statement of the "subject" in the title, and is void. No one can say from the reading of the title what the "subject" of the act is. *Harland* v. *Washington Territory*, 3 Wash. T. 142, 13 Pac. Rep. 453, is a case directly in point. It was there held that the "subject" of the act was not expressed in such title, and that the act was, therefore, void. The question is thoroughly considered in the opinion of the court, and the conclusion maintained by argument and authority which are unanswerable.

The "subject" must be expressed, stated, set forth in the title. It is

not sufficient if it (the subject) may be found elsewhere, as in the section to be amended, from what is said or suggested in the title of the amendatory act.

But the title of this act goes further, and says "laws of Oregon relating to pilotage at the Columbia river bar and on the Columbia and Willamette rivers." No expression of the "subject" of the act need be more explicit than this. From the whole title of the act it appears that the "subject" of the title of the Compilation, which it is the object of the act to amend, is "pilotage" on the waters therein mentioned.

If the "subject" of an amendatory act is ever sufficiently expressed in the title thereof, when the same contains the title of the act to be amended, in which the "subject" of the latter act is sufficiently expressed, then this is a good title.

An act entitled "An act to amend an act relating to pilotage," purports in such title to relate to pilotage also. That is the subject of the act as expressed; and, if there is anything in the act which does not relate to pilotage, the constitution avoids it. In my judgment an act entitled "An act to amend an act entitled 'An act to provide for pilotage on the Columbia and Willamette rivers,'" does express the subject thereof in the title. Such is the title of the amendatory act of February 18, 1885. Sess. Laws, 34. An act purporting by its title to be an act to amend another act relating to pilotage does thereby itself purport to be an act relating to pilotage, as much so as if it had been expressed in so many words.

But if the law is otherwise on this point, and it is not enough that the subject of the act to be amended is expressed in its title, which title is incorporated in the title of the amendatory act, the words in the title of the act in question ("to amend title 1 of chapter 66 of Hill's Annotated Laws of Oregon") may be omitted therefrom as surplusage. The title would then read: "An act relating to pilotage at the Columbia river bar and on the Columbia and Willamette rivers." This is certainly a good title, and would have been so if it had ended with the word "pilotage."

It is not necessary that the title should also show that the act is an amendatory one. It is sufficient if the "subject" thereof—the person or thing on or concerning which it is intended to operate—is expressed therein. If it is intended thereby to amend some prior act on that subject, that must be done by proper and apt words and references in the body of the act, as prescribed in the constitution.

My conclusion is that this act was passed in conformity with the fundamental law, and is therefore valid. This being so, the libelant is not entitled to recover anything beyond the sum already paid to him for his services as pilot on the Borrowdale.

The exception is sustained, and the libel dismissed.