[No. 5898. Decided November 7, 1905.]

THE STATE OF WASHINGTON, *Respondent,* v. O. V. LAWSON, *Appellant.*[1]

STATUTES—AMENDMENT—SETTING FORTH IN FULL. Const., art. 2, § 37, does not require, upon the amendment of a statute, that the entire act as amended shall be set forth in full, but only the amended sections.

PHYSICIANS AND SURGEONS—PRACTICING WITHOUT LICENSE—PROSECUTION—PROOF OF LICENSE—RECORDS. Upon a prosecution for practicing medicine without a license, there is sufficient *prima facie* evidence of the fact that the accused had no license where it was shown (1) that the secretary of the board of examiners had never issued him a license, (2) that he had filed no license with the county clerk, and (3) that his name did not appear on the records of the county auditor as a licensed physician.

1Reported in 82 Pac. 750.

CRIMINAL LAW—EVIDENCE—BURDEN OF PROOF—CONSTITUTIONALITY OF STATUTE. The statute making certain records *prima facie* evidence of the existence or nonexistence of a license to practice medicine, is not unconstitutional as imposing the burden of proof upon the accused.

Appeal from a judgment of the superior court for King county, Griffin, J., entered April 29, 1905, upon a trial and conviction of the offense of practicing medicine without a license. Affirmed.

*Allen, Allen & Stratton (George M. Sinclair,* of counsel), for appellant.

*Kenneth Mackintosh, Anthony M. Arntson,* and *Walker & Munn,* for respondent.

RUDKIN, J.—This is an appeal from a judgment entered on the verdict of a jury finding defendant guilty of practicing medicine without a license. The first act of the state legislature regulating the practice of medicine will be. found in the Laws of 1889-90, at page 114. The act consists of eleven sections, including an emergency clause. In 1901 an amendatory act was passed, entitled,

"An act to amend an act entitled, 'An act to regulate the practice of medicine and surgery in the State of Washington, and to license physicians and surgeons; to punish all people violating the provisions of this act, and to repeal all laws in conflict therewith, and ·declaring an emergency,' approved April 10, 1890" Laws 1901, p. 47.

The later act amended sections 3, 7, and 8 of the former, setting forth at length the three sections as amended. The first contention of appellant is, that there is no law in this state authorizing the licensing of persons to practice medicine and surgery; that the act of 1889-90 was entirely superseded by the amendatory act of 1901. The basis of this contention, as we understand it, is this: The amendatory act of 1901 does not set forth at full length the sections of the original act which were not amended, and it is claimed

that this is required by art. 2, § 37 of the state constitution, which reads:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

Whatever support this contention may find in the earlier decisions of the courts of Louisiana and Indiana, it is no longer considered as sound. Speaking of this constitutional provision, Judge Cooley says:

"It has also been deemed important, in some of the states, to provide by their constitutions, that 'no act shall ever be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length.' Upon this .provision an important query arises. Does it mean that the act or section revised or amended shall be set forth and published at full length as it stood before, or does it mean only that it shall be set forth and published at full length as amended or revised? Upon this question perhaps a consideration of the purpose of the provision may throw some light. 'The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effects, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for the express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation.' If this is a correct view of the purpose of the provision, it does not seem to be at all important to its accomplishment that the old law should be republished if the law as amended is given in full, with such reference to the old law as will show for what the new law is substituted. Nevertheless, it has been decided in Louisiana that the constitution requires the old law to be set forth and published; and the courts of Indiana, assum-

ing the provision in their own constitution to be taken from that of Louisiana after the decisions referred to had been made, at one time adopted and followed them as precedents. It is believed, however, that the general understanding of the provision in question is different, and that it is fully complied with in letter and spirit, if the act or section revised or amended is set forth and published as revised or amended, and that anything more only tends to render the statute unnecessarily cumbrous." Cooley, Const. Lim. (7th ed.), p. 214.

See, also, *The Borrowdale*, 39 Fed. 376. The unamended sections of the act of 1889-90 and the three sections as amended by the act of 1901 are, therefore, in full force and effect, and constitute the law on the subject under consideration.

It is next contended that the testimony is not sufficient to sustain the verdict of the jury. The uncontradicted testimony showed that the appellant practiced medicine as defined by the statute. The only remaining question is, did he have a license so to do? The testimony tending to show that he had no such license is the following: (1) The testimony of the secretary of the state board of medical examiners to the effect that the appellant never obtained a license from said board; (2) the testimony of the county clerk of King county to the effect that no license or certified copy of a license was of record in his office; and (3) the testimony of the county auditor of King county to the effect that the appellant's name did not appear as a licensed physician in the records of his office. . The appellant contends that, notwithstanding all such testimony, he may have been duly licensed in some other county in the state prior to the passage of the act of 1889-90, and such license not appear in any of said offices. This is, no doubt, true, but the statute makes the records of the clerk's office *prima facie* evidence of the existence or nonexistence of a license. The appellant concedes this, but says the statute declares an arbitrary and illogical rule of evidence, and is therefore unconstitutional.

Where a license issued in any county of a state authorizes the prosecution of a business or the practice of a profession in any part of the state, the difficulty of proving that a given person has no license is very great. This fact has induced many of the states to enact laws imposing on the defendant the burden of proving a license in all prosecutions such as this, and these statutes have been declared constitutional. Wharton, Crim. Ev. (9th ed.), § 342; *Commonwealth v. Curran,* 119 Mass. 206. If the state can require the defendant to justify under his license in the absence of any proof whatever, it goes without saying that it can likewise declare what character of proof shall constitute *prima facie* evidence..

Certain objections are urged against the instructions of the court, but the instructions were not excepted to, and we cannot consider them.

There is no error in the record, and the judgment is affirmed.

MOUNT, C. J., DUNBAR, HADLEY, CROW, ROOT, and FULLERTON, JJ., concur.